KENNEDY LILLIS SCHMIDT & ENGLISH
John T. Lillis, Jr., Esq.
jlillis@klselaw.com
125 Maiden Lane, Suite 5C
New York, New York  10038
Tel.:  (212) 430-0801

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>143 COURT ST. ASSOCIATES LLC,<br><br>      Debtor. | Chapter 11<br><br>25-41056<br><br>ATTORNEY AFFIRMATION IN SUPPORT OF MOTION TO SUPPLEMENT, FILED ON CONSENT OF OPPOSING COUNSEL |

   John T. Lillis, Jr., an Attorney duly admitted to practice before the Courts of the State of New York State and this Honorable Court, affirms the following on penalty of perjury:

   1. I am a Partner at Kennedy Lillis Schmidt & English ("KLSE"), attorneys for 143 COURT ST. ASSOCIATES LLC ("CSA") and MEIR HILLEL ("Hillel"), and am familiar with the file, records, and pleadings in this matter.

   2. I file this Affirmation of Hillel's and CSA's Motion to Supplement filed concomitantly herewith and in further support of Hillel and CSA's 1 May 2025 Motion to Dismiss the captioned Chapter 11 proceeding pursuant to 11 USCS § 1112(b), Docket Entries ("DEs") 32-34 (collectively "Motion to Dismiss").

Page **1** of **5**

3.  Opposing Counsel consents to this Motion to Supplement being returnable 21 October 2025, at 10:00 AM, and intends to file a response on or before 15 October 2025.

*Relevant Procedural History*

4.  On 21 May 2025, Habib Tawil ("Habib") and Lily Tawil ("Lily") (collectively "the Tawils") filed their opposition to the Motion to Dismiss. DEs 48-49.

5.  On 27 May 2025, Hillel and CSA submitted their reply on their Motion to Dismiss. DE 50.

6.  Hillel's Motion was originally made returnable on 28 May 2025.

7.  However, this Honorable Court subsequently ordered Hillel and the Tawils to mediation and amended the return date for the Motion to Dismiss to 21 October 2025. DEs 53, 56.

8.  On 10 September 2025, mediation was held before Martin G. Bunin, Esq.

9.  Mediation was unsuccessful. DE 70.

10. After the submission relating to Hillel's and CSA's Motion to Dismiss were made in May 2025, Judge Fisher ruled in another dispute between Hillel and the Tawils, captioned *Lazarus, et al v. Tawil, et al*, Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. 4-4497-23 ("Brighton Matter"). See Exhibits A-B.

*Supplemental Materials and Argument*

11. Via this Motion, Hillel and CSA respectfully offer the following materials form the Brighton Matter in further support of their Motion to Dismiss:

    a.  30 June 2025 Opinion of the Hon. Clarkson S. Fisher, Jr., attached hereto as **Exhibit A**;
    b.  24 July 2025 Opinion of the Hon. Clarkson S. Fisher, Jr., attached hereto as **Exhibit B**.

      c.      Excerpts from Habib Tawil's trial testimony, attached hereto as **Exhibit C**.

12.      None of the above-referenced materials were available when CSA and Hillel made their filings relating to their Motion to Dismiss in May 2025.

13.      As is relevant here, during trial of the Brighton Matter, Habib confessed to having defrauded *his wife* Lily in the exact manner Hillel maintains Habib used to defraud him into signing the Assignment and Assumption Agreement (DE 49-1) on 7 June 2018, which at Habib's insistence was back-dated to 28 February 2017 – i.e. the "Agreement" upon which the Tawils now claim a 100% ownership interest in CSA (See Habib Tawil Declarations, DE 4 ¶ 18 and 49 ¶ 1). See Affidavit of Meir Hillel, DE 50-1 ¶¶ 31-73.

14.      Specifically, during his testimony in the Brighton Matter, Habib admitted to (1) fraudulently inducing his own wife, Lily, into signing a series of settlement documents that Hillel and Habib had already signed and notarized (which also required Lily's notarized signature to become legally operative) and (2) having done so in essentially the same manner as detailed by Hillel in his 27 May 2025 Affidavit, DE 50-1 ¶¶ 31-73:

> Hillel's Attorney Lillis:   Okay. What -- what did you tell your wife about what these papers [i.e. the settlement documents] were . . . [b]efore you got to TD Bank [where Lily signed them and had them notarized]?
>
> Habib Tawil:   So, I don't recall exactly. I could have – I maybe told her that they were bank account -- a bank account to open, or -- I don't recall exactly my words. But I made sure for her not to see the papers. I do remember putting the signature papers on top, and just giving it to the -- to the -- the clerk over there, and she did sign them.

11 June 2025 Trial Transcript, 49:9-10; 49:14-21, attached hereto as Exhibit C (which contains additional excerpts).

Page **3** of **5**

| | |
|---|---|
| Habib Tawil: | So, I definitely did not want her to see what was in those papers. That's for sure. I didn't want her to get worried, and I didn't want her to get excited, and I didn't want her to see it definitely. I know -- even Meir Hillel called me that morning and said did you get the papers signed? I said I'm working on it. So, it's a hundred percent that I did not want her to see what was in those papers, so she could say what is this and what is that. I didn't want her to ask any questions, and she didn't ask any questions, because she didn't see it. |

*Id*. at 79:15-25.

15.   In its 30 June 2025 Opinion, attached hereto as Exhibit A, the Court in the Brighton Matter found and concluded as follows:

> The court concludes that Lily did not know what she was signing and that ***her unknowing execution of the documents was brought about by the fraud or obfuscations of her own husband.*** **Indeed, she seems to concede it was *her own husband's active trickery that led to her affixing her signatures on the Hackensack [settlement] documents.***

30 June 2025 Opinion, Trans. ID CHC2025204479, p. 19 (Emphasis added).

> Habib's affirmative representation that he would obtain Lily's consent to the agreements was, in fact, a critical part of their overall agreement, and Habib was obligated to seek Lily's consent in good faith and in fair dealing. If he failed to obtain it, or if he had obtained her signatures but not really her consent, Habib was bound to advise Meir of that fact. He didn't. **Just as he defrauded Lily, Habib defrauded Meir.**

*Id*. at 25 (Emphasis added).

16.   Habib's admissions of defrauding his wife in relation to her execution of the Brighton settlement documents and the Brighton Court's pronouncement that Habib defrauded both his wife and Hillel in procuring said signature clearly support Hillel's rendition of how Habib fraudulently procured Hillel's and his wife's signatures on the Assignment and Assumption Agreement, executed by them on 7 June 2018.  That is, if Habib would defraud his own wife, any court

(or jury) considering this matter should have no reason to doubt that he would do the same to his close friend, as he did here.

17. Therefore, because the Assignment and Assumption Agreement (DE 49-1) upon which the Tawils' opposition to the Motion to Dismiss is based, was procured through fraud, it is a nullity, and the 26 December 2015 CSA Operating Agreement (DE 32-5) controls here such that Habib, as a 10% owner, had no right to unilaterally file this bankruptcy action. *Id*. ¶¶ 6-7, 10.

18. Accordingly, the Motion to Dismiss should be granted and these bankruptcy proceedings dismissed.

19. Alternatively, should this Honorable Court decide, in the interest of justice, that there should be an evidentiary hearing before the Court, then Hillel requests a 90-day discovery period to prepare for trial on any issues identified by the Court as requiring such a hearing.

Dated:  New York, New York
             September 22, 2025

                                                    *s/ John T. Lillis, Jr.*
                                                      John T. Lillis, Jr.